UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------

NGOC P. LE,

                    Plaintiff,

     -v-                                          1:16-CV-1517

NEW YORK STATE, OFFICE
OF STATE COMPTROLLER,

                      Defendant.

-------------------------------------

APPEARANCES:                                         OF COUNSEL:

NGOC P. LE
Plaintiff, pro se
80 Ridge Wood Drive
Mechanicville, NY 12118

HON. ERIC T. SCHNEIDERMAN              SHANNAN C. KRASNOKUTSKI, ESQ.
Attorney General for the State of New York     Ass't Attorney General
Attorneys for Defendants
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

      On December 22, 2016, pro se plaintiff Ngoc P. Le ("Le" or "plaintiff") filed this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") against her employer, defendant New York State Office of the State Comptroller (the "OSC" or "defendant"). According to plaintiff, defendant has wrongly sided with, and failed to take corrective action against, plaintiff's co-workers and supervisors, who are

harassing and following her at her workplace and around her neighborhood.

On February 21, 2017, the OSC moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) seeking dismissal of Le's complaint for failure to state any claims upon which relief could be granted. The motion has been fully briefed and will be considered on the basis of all of the parties' various submissions without oral argument.[1]

## II. BACKGROUND[2]

In 1999, the OSC hired Le, a woman of Asian descent, to work as a "Calculations Clerk I" in its office in Albany, New York. See Compl. at 6; Pl.'s Opp'n at 2; Pl.'s Sur-Reply Ex. A at 2.[3] Plaintiff performed her job well and received several promotions over the next decade, eventually attaining the title of "G18 Senior Abandoned Property Accounts Auditor" in the OSC's "Office of Unclaimed Funds." Pl.'s Sur-Reply Ex. A at 2.

In 2011, however, Le began experiencing issues with her co-workers and supervisors. See generally Compl.; Pl.'s Opp'n. Plaintiff alleges that she initially reported to her manager, Tom Klim ("Klim"), that one of her co-workers, Michael St. Pierre ("St. Pierre"), had begun "following her." Compl. at 7. According to plaintiff, Klim "never believed nor supported" her. Id. And although it is unclear precisely how these initial reports were

---

[1] Plaintiff and defendant have both filed letter motions requesting that the Court consider certain additional submissions. Those motions will be granted.

[2] The following allegations are taken from Le's complaint, as supplemented by her additional documentary submissions, and are assumed true for purposes of resolving the OSC's motion to dismiss. See, e.g., Drake v. Delta Air Lines, Inc., 147 F.3d 169, 170 n.1 (2d Cir. 1998) (per curiam) (approving district court's decision to deem pro se plaintiff's complaint to include additional facts submitted in opposition to motion to dismiss); Crum v. Dodrill, 562 F. Supp. 2d 366, 374 n.13 (N.D.N.Y. 2008) (treating pro se plaintiff's additional submissions in opposition to a motion to dismiss as effectively amending the allegations in his complaint); Gray-Davis v. Rigby, 2016 WL 1298131, at *8 n.3 (N.D.N.Y. Mar. 31, 2016) (Suddaby, J.) (same).

[3] Pagination corresponds to that assigned by CM/ECF.

resolved, plaintiff has submitted documents indicating that some manner of internal investigation occurred. See Pl.'s Sur-Reply Ex. A at 1-15.

On October 31, 2013, Klim and his supervisor, Eric Duval ("Duval"), along with Director of Labor Relations Ray Ellen Burke ("Director Burke"), "accused" Le of being incompetent and referred her to Employee Health Services ("EHS") for a psychological examination. Compl. at 9. According to plaintiff, Klim had asked plaintiff to complete a work task for which there "were no procedures" and, as a result, plaintiff "was misled and made mistakes." Id. Although these mistakes were "fixable errors," plaintiff alleges that Klim "was mad" and "yelled at [her] in front of another co-worker." Id. Plaintiff further alleges that she was sent to this psychological examination in "retaliation[ ]" for mentioning that "the managers were following [her]." Id. at 7, 9.

Between September and October of 2015, Klim reported to the Human Resources Department ("HR Department") that Le was "staring" at him. Compl. at 7-8. According to plaintiff, Klim "exaggerated the incident" and "made a big deal out of it." Id. at 8.

On November 12, 2015, when Le saw Roberta Keaton ("Keaton"), another one of her co-workers, in the employee bathroom, plaintiff told Keaton to "[m]ake my day." Compl. at 8. According to plaintiff, this "only meant that [she] would go and seek help against the harassment." Id. Apparently, however, Keaton "felt threatened" and reported this incident to plaintiff's superiors. Id. After that, plaintiff "started suspecting [Keaton] of following and watching" her. Id.

On December 2, 2015, Kim Ferguson ("Ferguson"), another of Le's co-workers, approached plaintiff and told her that other co-workers at the OSC "were afraid that [she] was going to perform similar actions as the couple involved in the San Bernardino

attack." Compl. at 9. Plaintiff alleges that Ferguson and other co-workers felt this way because "everyone in [her] office knows that [she is] married to a Muslim man." Id. at 10. According to plaintiff, her co-workers then "attempted to report [her]" to the HR Department. Id. at 9.

On January 21, 2016, Le alleges that Rachel Clevenger ("Clevenger"), an HR Department employee, "interrogated" her in the Labor Relations Conference Room regarding reports from plaintiff's co-workers and supervisors accusing plaintiff of "strange behaviors." Compl. at 6-7. In response, plaintiff told Clevenger that her co-workers had in fact "teamed up" to "watch" and "follow" her.[4] Id. at 8. According to plaintiff, Clevenger did not believe plaintiff and "without warning [ ] charged [plaintiff] with [a] penalty." Id.

On February 8, 2016, Le filed a verified complaint with the New York State Division of Human Rights ("DHR") charging the OSC with unlawful discrimination. Compl. at 7, 13. According to plaintiff's DHR complaint, "co-workers and supervisors in her agency have taken to following her home, following her to lunch and making it seem like she makes mistakes on the job because she is Asian and perceived Muslim." Id. at 13. About one month later, Clevenger scheduled plaintiff for a second psychological examination. Id. at 7; Pl.'s Opp'n at 3.

On August 5, 2016, the DHR dismissed Le's discrimination complaint and closed its investigation. Compl. at 14-15. Thereafter, on August 11, plaintiff received from Clevenger a Notice of Discipline and a proposed penalty for misconduct. Compl. at 6. According to

---

[4] For instance, Le alleges co-worker Cheryl Daculo joined Klim and Duval in following her around the office and even "insulted" plaintiff with "profane remarks" because she is an "Asian woman . . . perceived as Muslim." Compl. at 8; Pl.'s Sur-Reply at 3. Despite notifying Clevenger about the insulting remarks and mistakes other co-workers made, plaintiff alleges that no other co-workers were sent for psychological examinations. Id.

plaintiff, the proposed penalty was "a week without pay." Pl.'s Opp'n at 3. However, instead of receiving a week without pay, plaintiff received only "an official reprimand" from the HR Department. See Letter of Reprimand, ECF No. 12, 2. Plaintiff alleges that these documents, as well as the record of her two psychological evaluations, will remain in her "history folder" for three years. Pl.'s Sur-Reply at 3. According to plaintiff, this "will affect [her] future advancement and development." Id.

In sum, Le alleges that she is being followed around her "work building areas, into the restrooms, elevators, cafeteria, on buses, [at her] son's daycare center, at home, and to stores" by her co-workers and supervisors as well as people she does not recognize. See Compl. at 10. Although plaintiff acknowledges that the "the terms and conditions of [her] employment have not changed in any way following [her] examination by the psychologist," she claims that, as a result of the actions described above, she has "lost faith" in her co-workers and is "not happy as [she] used to be coming into work." Pl.'s Opp'n at 3-4.

## III. LEGAL STANDARDS

### A. Failure to State a Claim

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Ginsburg v. City of Ithaca, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Although a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief' (FED. R. CIV. P. 8(A)(2)), more than mere conclusions are required." Id. "Indeed, '[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.'" Id. (quoting Ashcroft v. Iqbal,

- 5 -

556 U.S. 662, 679 (2009)).  "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims."  Id.; see also Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor."  Faiaz v. Colgate Univ., 64 F. Supp. 3d 336, 344 (N.D.N.Y. 2014) (Baxter, M.J.).  In making this determination, a court generally confines itself to the "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken."  Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Concord Assocs., L.P. v. Entm't Props. Tr., 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

However, in some cases, "a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss."  Goel, 820 F.3d at 559.  A document is only "integral" to the complaint "where it relies heavily upon its terms and effect."  Id. (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

In other words, mere notice or possession of the document is not enough; rather, the plaintiff must have relied on the terms and effect of the document in drafting the complaint.  See Goel, 820 F.3d at 559; see also Nicosia v. Amazon.com, Inc., 834 F.3d 220, 231 (2d Cir. 2016) (observing that this exception is typically invoked where the unincorporated material is a "contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because

- 6 -

the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint"). Even then, consideration of such material is only proper if it is clear on the record that no dispute exists regarding the authenticity or accuracy of the document and that there are no material disputed issues of fact regarding the material's relevance. Nicosia, 834 F.3d at 231.

### B. Pro Se Pleadings

The basic pleading requirements set forth above apply to pro se plaintiffs as well as plaintiffs represented by counsel, but "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012) (internal quotation marks omitted) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). In other words, "[w]here, as here, the complaint was filed pro se, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (quoting Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011)).

However, "all normal rules of pleading are not absolutely suspended" when a plaintiff is proceeding pro se. Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 214 (N.D.N.Y. 2008) (McAvoy, J.) (internal quotation marks and footnote omitted). Even a pro se plaintiff must plead sufficient factual allegations to suggest an entitlement to relief. See id. Simply put, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citations omitted).

## IV. DISCUSSION

Liberally construed, Le's complaint alleges Title VII claims for: (1) disparate treatment; (2) a hostile work environment; and (3) retaliation.

**A. Disparate Treatment**

At the pleadings stage, Title VII "requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015).

"As to the first element, an employer discriminates against a plaintiff by taking an adverse employment action against him." Vega, 801 F.3d at 85. "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted).

"An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks omitted). "Examples of materially adverse changes including termination of employment, a demotion evidence by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Vega, 801 F.3d at 85.

"As to the second element, an action is 'because of' a plaintiff's race, color, religion, sex, or national origin where it was a 'substantial' or 'motivating' factor contributing to the employer's decision to take the action." Vega, 801 F.3d at 85 (citation omitted). In other words, "a plaintiff in a Title VII case need not allege 'but-for' causation." Id.

"At the pleadings stage, then, a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving

rise to a plausible inference of discrimination." Vega, 801 F.3d at 87 (citing Littlejohn v. City of N.Y., 795 F.3d 297, 310 (2d Cir. 2015)).

"An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" Littlejohn, 795 F.3d at 312 (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009)).

Upon review of Le's allegations, several of the allegedly discriminatory acts about which she complains are barred by Title VII's 300-day statute of limitations.

"Title VII requires that individuals aggrieved by acts of discrimination file a charge with the [U.S. Equal Employment Opportunity Commission] within 180 or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days 'after the alleged unlawful employment practice occurred.'" Vega, 801 F.3d at 78-79 (quoting 42 U.S.C. § 2000e-5(e)(1)); see also Jiles v. Rochester Genesee Regional Transp. Auth., 217 F. Supp. 3d 688, 690 (W.D.N.Y. 2016) ("Because New York is a so-called dual-filing or deferral state, a plaintiff must file a charge under Title VII within 300 days of the occurrence of a discriminatory act.").

As the Supreme Court has explained, the word "practice" in the Title VII employment discrimination context refers to "a discrete act or single 'occurrence,'" meaning that a "a discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" Vega, 801 F.3d at 79 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110-11 (2002)). Consequently, "[e]ach discrete discriminatory act starts a new clock for filing

charges alleging that act." Morgan, 536 U.S. at 113.

Le filed her discrimination complaint with the DHR on February 8, 2016, making April 14, 2015 the relevant 300-day time period for purposes of Title VII. Accordingly, plaintiff's allegations concerning her (1) initial report to Klim in 2011 that St. Pierre had begun "following her," Compl. at 7, as well as her (2) allegations from 2013 concerning Klim's public reprimand and subsequent referral for an employee psychological evaluation, Compl. at 9, are time-barred.

Importantly, these time-barred incidents are not saved by Title VII's "continuing violation exception." Under this exception, "if a plaintiff files a timely EEOC charge 'as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone.'" Edner v. NYCTA-MTA, 134 F. Supp. 3d 657, 663 (E.D.N.Y. 2015) (quoting Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 155-56 (2d Cir. 2012)).

Generally speaking, "[t]he continuing violation exception applies to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists, or discriminatory employment tests." Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993) (internal citations omitted), overruled on other grounds by Greathouse v. JHS Sec. Inc., 784 F.3d 105 (2d Cir. 2015).

However, this doctrine is inapplicable to "discrete acts" of discrimination, even if they are "related to acts alleged in timely filed charges." Edner, 134 F. Supp. 3d at 664 (citation omitted); see also Cabrera v. NYC, 436 F. Supp. 2d 635, 642 (S.D.N.Y. 2006) ("The Second Circuit has repeatedly ruled that 'multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing

violation.'" (citation omitted)).

"Such discrete acts include termination, disparate disciplining, and negative performance evaluations." Edner, 134 F. Supp. 3d at 664 (collecting cases); see also Pietri v. N.Y.S. Office of Court Admin., 936 F. Supp. 2d 120, 134 (E.D.N.Y. 2013) ("Discrete acts of discrimination include termination, failure to promote, denial of transfer, or refusal to hire.").

Although Le contends that the events in her complaint, considered in the aggregate, have caused her to "los[e] faith" in her co-workers and to not be as "happy as [she] used to be coming into work," Pl.'s Opp'n at 3-4, the otherwise-untimely incidents alleged in her complaint are clearly a series of discrete acts, such as a referral for a psychological evaluation, a reprimand by a supervisor, and an unexplored allegation that a co-worker was acting in an inappropriate manner. Because these incidents do not plausibly form part of a "continuing violation" for purposes of Title VII, they are time-barred.

This conclusion leaves for consideration Le's allegations that (1) Ferguson expressed concern to plaintiff that she might take action similar to the "San Bernardino" shooting incident; (2) Clevenger (a) interrogated plaintiff for her "strange behaviors," (b) referred plaintiff for a second psychological evaluation, and (c) issued a Notice of Discipline and proposed penalty to plaintiff; and (3) she eventually received an "official reprimand" from the HR Department of the OSC.

First, to the extent Le alleges the OSC is liable under Title VII for certain comments and actions that plaintiff's coworkers undertook because they "perceiv[ed]" her to Muslim, those claims must be dismissed. See, e.g., Lewis v. N. Gen. Hosp., 502 F. Supp. 2d 390, 401 (S.D.N.Y. 2007) ("[T]he protections of Title VII do not extend to persons who are merely 'perceived' to belong to a protected class.").

Even assuming otherwise in light of Le's pro se status, plaintiff's disparate treatment allegations consist of the following conduct: Ferguson, one of plaintiff's co-workers, approached her to say that she and several other co-workers were concerned plaintiff might do something similar to the "San Bernardino" shooting incident. Apparently, Ferguson and/or other co-workers also made a report to the OSC's HR Department, which resulted weeks later in plaintiff being "interrogated" by Clevenger for the "strange behaviors" reported by other staff. When plaintiff explained to Clevenger that her co-workers had in fact "teamed up" to "watch" and "follow" her, Clevenger did not accept that explanation; instead, Clevenger referred plaintiff for a psychological evaluation and charged her with a "penalty."

These allegations do not state plausible discrimination claims based on religion, national origin, or gender. The insensitive and even possibly offensive comments made by a few of Le's co-workers are insufficient bases on which to sustain a Title VII disparate treatment claim. See, e.g., Davis v. NYS Dep't of Corr. Attica Corr. Facility P.O. Box 149 Attica, N.Y. 14011, 46 F. Supp. 3d 226, 236 (W.D.N.Y. 2014) ("Whispering, gossiping, and making negative comments about an employee [ ] do not rise to the level of an adverse employment action . . . .").

In a similar vein, Le's allegations about Clevenger's actions also fail to provide a basis on which to sustain a Title VII claim. Lyman v. NYS OASAS, 928 F. Supp. 2d 509, 521 (N.D.N.Y. 2013) (D'Agostino, J.) ("[I]nterrogations alone are insufficient as a matter of law to establish an adverse employment action."); Krinsky v. Abrams, 2007 WL 1541369, at *7 (E.D.N.Y. May 25, 2007) ("[R]eferral for a psychological evaluation is not considered an adverse employment action.").

Further, Le alleges that although Clevenger *proposed* "a week without pay" as a

penalty after interrogating her, plaintiff *received* only an "official reprimand" as a result of this incident. Under those circumstances, neither the proposed penalty nor the penalty itself suffice to establish an adverse employment action for purposes of a Title VII disparate treatment claim. See, e.g., Johnson v. Long Island Univ., 58 F. Supp. 3d 211, 223 (E.D.N.Y. 2014) (holding that an employer's reprimand is not an adverse employment action in the absence of other negative results such as a decrease in pay or being placed on probation).

In fact, Le's assertion that this official reprimand, which will remain in her "history folder" for three years, "will affect [her] future advancement and development" is entirely speculative and cannot suffice as an adverse employment action. Cf. Cotterell v. Gilmore, 64 F. Supp. 3d 406, 431 (E.D.N.Y. 2014) (rejecting plaintiff's claim that a notice of discipline "affected his career opportunities" where he failed to demonstrate "that it actually did so, such as showing that he applied for and was denied a promotion").

Nevertheless, assuming one or more of these actions were sufficiently "adverse" for purposes of Title VII's requirement, none of these actions occurred under circumstances giving rise to a plausible inference of discriminatory intent; that is, that the OSC's perception of Le as a Muslim, or her status as either a woman or a person of Asian descent, was a "substantial" or "motivating" factor behind either Ferguson's or Clevenger's actions. See Vega, 801 F.3d at 85; see also Moultrie v. Carver Found., 669 F. App'x 25, 26 (2d Cir. 2016) (summary order) ("Due to the absence of any specific allegations in [plaintiff's] complaint giving rise to an inference of [discrimination], the complaint must be dismissed for failure to state a claim upon which relief can be granted."). Accordingly, these claims must be dismissed.

B. **Hostile Work Environment**

Le also contends that she was subjected to a hostile work environment. According to plaintiff, her co-workers and supervisors treated her poorly because she is of Asian descent.

"A hostile work environment claim 'is a wholly separate cause of action designed to address other types of *work place* behavior, like constant jokes and ridicule or physical intimidation.'" Hughes v. Xerox Corp., 37 F. Supp. 3d 629, 648 (W.D.N.Y. 2014) (citation omitted).

"To establish a hostile work environment under Title VII, . . . a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Littlejohn, 795 F.3d at 320-21 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

"This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." Littlejohn, 795 F.3d at 321 (quoting Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014)). "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Id.

"In determining whether a plaintiff suffered a hostile work environment, [a court] must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Littlejohn, 795 F.3d at 321 (quoting Harris, 510 U.S. at 23).

- 14 -

At the outset, it is recognized that "a hostile work environment claim is treated as a continuing violation and treated as timely if one act contributing to the claim occurred within the 300-day period . . . ." Baroor v. N.Y. City Dep't of Educ., 362 F. App'x 157, 159 (2d Cir. 2010) (summary order). Accordingly, the otherwise-untimely allegations set forth in Le's complaint may be considered in evaluating the plausibility of her hostile work environment claim.[5]

Yet even considering the time-barred allegations in conjunction with her timely allegations, Le's hostile work environment claim must fail. Plaintiff's hostile work environment claim concerns her contention that various co-workers have teamed up to "follow" and "watch her." Plaintiff alleges this course of conduct began in 2011, when she reported to Klim, her manager, that St. Pierre, her co-worker, had begun "following her." Two years later, in 2013, Klim "accused' plaintiff of being incompetent after "yell[ing]" at her in front of another co-worker. According to plaintiff, Klim and others referred her for a psychological examination as a result of this incident.

Then, in September or October of 2015, Klim reported Le to the HR Department for "staring" at him. The next month, Keaton, one of plaintiff's co-workers, reported to management that plaintiff had made a threatening statement in the bathroom. The month after that, Ferguson, another of plaintiff's co-workers, approached plaintiff and told her that the OSC employees "were afraid that [she] was going to perform similar actions as the couple involved in the San Bernardino attack." According to plaintiff, her co-workers then "attempted to report [her]" to the HR Department.

---

[5] At the same time, however, courts have cautioned that "[h]ostile work environment is not a vehicle for resurrecting time-barred claims of discrimination." Hughes, 37 F. Supp. 3d at 648.

As a result of the incidents reported by co-workers and supervisors in late 2015, Clevenger "interrogated" plaintiff in January of 2016, where she received an opportunity to tell her side of the story. However, when plaintiff told Clevenger that her co-workers had in fact "teamed up" to "watch" and "follow" her, Clevenger did not believe her and instead chose to discipline plaintiff. In addition, Clevenger referred plaintiff for a second psychological examination. As a result of this "interrogation," plaintiff ultimately received an official reprimand.

Considered in the aggregate, these incidents, which took place in isolated phases over the course of nearly five years, are far too episodic to be deemed pervasive. Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) ("[A] work environment's hostility should be assessed based on the 'totality of the circumstances'"); see also Cotterell, 64 F. Supp. 3d at 431 (considering whether an "atmosphere" of seemingly minor incidents might suffice "once they reach a critical mass").

In fact, very little of the conduct about which Le complains bears even an inferential connection to her gender, national origin, or religion. See Ortiz v. Metro. Transp. Auth., 615 F. App'x 702, 703 (2d Cir. 2015) (summary order) (affirming grant of summary judgment on hostile work environment claim where "most of the complained-of conduct bears no apparent connection to [plaintiff's] sex, race, or national origin").

Le's *subjective* belief that she was being subjected to a hostile work environment based on her membership in one or more protected classes—"however strongly felt—is insufficient to satisfy [her] burden at the pleading stage." Lenart v. Coach Inc., 131 F. Supp. 3d 61, 68 (S.D.N.Y. 2015) (citation omitted). Accordingly, this claim must be dismissed.

**C. Retaliation**

Finally, Le alleges that the OSC retaliated against her after she filed her DHR complaint.

"[F]or a retaliation claim to survive a . . . motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him; (2) 'because' he has opposed any unlawful employment practice." Vega, 801 F.3d at 90.

In the context of a Title VII retaliation claim, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination." Vega, 801 F.3d at 90 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).

"This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII: '[T]he antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'" Vega, 801 F.3d at 90 (quoting White, 548 U.S. at 64).

"As for causation, a plaintiff must plausibly plead a connection between the act and his engagement in protected activity." Vega, 801 F.3d at 90. "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." Id. "Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." Id.

Le has failed to plausibly allege that the OSC retaliated against her for any protected activity. Plaintiff alleges that Clevenger "interrogated" her on January 21, 2016, disbelieving

- 17 -

her explanation about being followed and watched by her co-workers and informing her that she would be charged with a penalty at that time. Two weeks after this initial proposal, plaintiff filed her discrimination complaint with DHR. This sequence of events does not give rise to a causal connection. Cf. Cifra v. Gen. Elec. Co., 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.").

Of course, Le alleges that Clevenger scheduled her for a second psychological evaluation about one month later. And about five months after that, plaintiff finally received from Clevenger a formal Notice of Discipline along with a proposed penalty for misconduct. Eventually, however, instead of receiving a week without pay as Clevenger had proposed, plaintiff received only "an official reprimand" from the HR Department.

After careful consideration, these incidents do not suffice to state a plausible claim for retaliation. To be sure, "[c]ourts in the Second Circuit have taken a 'generous' view of retaliatory acts at the motion to dismiss stage." Ingrassia v. Health & Hosp. Corp., 130 F. Supp. 3d 709, 723 (E.D.N.Y. 2015).

However, as the Supreme Court has cautioned, "[c]ontext matters." White, 548 U.S. at 69. As relevant here, "mere continuation of an adverse employment condition initiated long before the protected activity in question does not, without more, logically support an inference that the protected activity prompted retaliation." Washington v. City of N.Y., 2009 WL 1585947, at *8 (S.D.N.Y. June 5, 2009). Here, any causal connection Le attempts to draw between the official reprimand and her earlier DHR complaint is undermined by the fact that the eventual issuance of the reprimand is alleged to have been the result of her earlier, pre-complaint meeting with Clevenger.

In any event, there is simply no factual allegation, or combination of factual allegations, in any of Le's submissions that plausibly gives rise to even an indirect inference that one or more of the adverse actions plaintiff identifies—assuming in the first place that these actions are sufficiently "adverse" in light of the lower standard applied in the retaliation context—were in any way somehow causally related to plaintiff's filing of her DHR charge or, for that matter, to any complaint made by plaintiff, informal or otherwise, to her supervisors at the OSC.  Accordingly, this claim must be dismissed.

## V. CONCLUSION

Le's various allegations, even liberally construed in her favor, fail to establish any plausible federal claims.  To the extent that plaintiff's submissions might be construed to assert one or more claims based on state law, supplemental jurisdiction over those claims will be declined.  See 28 U.S.C. § 1367(c)(3).  Accordingly, the OSC's motion to dismiss will be granted.

As a final matter, it bears noting that district courts in this Circuit are generally reluctant to dismiss a pro se plaintiff's action without permitting them at least one opportunity to attempt to replead.  However, given the tenor of plaintiff's factual allegations as well as the fact that her various additional submissions have already been considered, it is unnecessary to permit plaintiff any further opportunity to amend her complaint.  See Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (explaining that it may be appropriate to deny leave to replead in cases "[w]here it appears that granting leave to amend is unlikely to be productive").

Therefore, it is

ORDERED that

- 19 -

Defendant's motion to dismiss is GRANTED. The Clerk of the Court is directed to terminate all pending motions, enter a judgment dismissing the complaint, and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated: July 18, 2017
       Utica, New York.